PEARSON, MJ

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| MICAH WILLIAMS, | ) | CASE NO.1:09CV0495 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | BENITA Y. PEARSON |
| KEITH SMITH, Warden | ) | |
| | ) | |
| Respondent. | | **REPORT AND RECOMMENDATION** |

### I.  Introduction

This Report and Recommendation responds to Petitioner Micah Williams' *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1.  Williams challenges the constitutionality of his August 14, 2006, conviction pursuant to a plea of guilty to one count of involuntary manslaughter, with a firearm specification, one count of kidnapping, one count of aggravated robbery, and one count of tampering with evidence, upon which he was sentenced to consecutive terms of incarceration for an aggregate term of thirty (30) years.  ECF No. 8-4, Ex. 15.

### II. Factual and Procedural Background

The State appellate court's factual findings shall be presumed correct; petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see Brumley v. Wingard*, 269 F. 3d 629, 637 (6th Cir. 2001).  The Cuyahoga County Court of Appeals, Eighth Appellate District, found the facts giving rise to Williams' guilty pleas to be as follows in pertinent part:

(1:09CV0495 )

> In August 2005, Williams was charged in a multi-count indictment
> with two counts of capital murder, two counts of aggravated
> robbery, and one count of tampering with evidence.  Williams
> entered a plea of not guilty to the charges.  On the day of trial,
> August 14, 2006, Williams entered into a plea agreement.  As part
> of the agreement, the state amended its indictment and Williams
> entered pleas of guilty to one count of involuntary manslaughter, in
> violation of R.C. 2903.04(A) with a three-year firearms
> specification; one count of kidnapping, in violation of R.C.
> 2905.01(A)(3); one count of aggravated robbery, in violation of
> R.C. 2911.01(A)(1); and, one count of tampering with records, in
> violation of R.C. 2921.12.  All of the amended charges are first
> degree felonies with the exception of tampering with evidence
> which is a third degree felony.  The state made no recommendation
> as to the sentence.
>
> After a comprehensive plea hearing in which the court explained
> all of the constitutional and non-constitutional rights he would be
> waiving by entering a guilty plea, Williams entered pleas of guilty
> to the amended charges.  The trial court accepted the pleas and
> convicted Williams of the offenses as reflected in the amended
> indictment.  A sentencing hearing was set for August 28, 2006.
>
> At the sentencing hearing, the trial court sentenced Williams to 10
> years on count one, involuntary manslaughter; three years on the
> firearms specification; six years on count two, kidnapping six years
> on count three, aggravated robbery; and, five years on count four,
> tampering with evidence.  The court ordered the terms to be served
> consecutively, resulting in a term of incarceration of 30 years.
>
> After sentencing, Williams immediately filed a motion to vacate
> his guilty pleas.  The court denied the motion without a hearing.

ECF No. 8-5, Ex. 23.

In his timely filed direct appeal of his convictions, Williams raised the following six

assignments of error:

> I.      The trial court was without authority to accept a guilty plea to
>         kidnapping under count two, where the appellant was indicted for
>         aggravated murder, and the acceptance of such plea violated Crim.

2

(1:09CV0495 )

> R 7 and the Fifth, Sixth and Fourteenth Amendments of the
> Federal Constitution.

II.     The trial court's order that appellant be held in solitary
confinement twice a year violated the Fourteenth Amendment of
the federal Constitution and State v. Vaughn, 2002 Ohio 5046.

III.    The trial court violated the Fourteenth Amendment and abused its
discretion in denying appellant an evidentiary hearing and in
denying appellant's motion to withdraw his guilty pleas.

IV.    Trial counsel was ineffective under the Sixth and Fourteenth
Amendments of the federal Constitution when he advised the
appellant to plead guilty and represented to appellant he would
receive less than the 20 years recommended by the State; the
appellant was prejudiced by such representation when the trial
court imposed a 30 year sentence.

V.     The trial judge's explicit Biblical references during the sentencing
hearing violated the appellant's right to Due Process and prevented
him from having a fundamentally fair sentencing hearing in
violation of the Fourteenth Amendment of the federal Constitution.

VI.    The cumulative errors during the guilty plea, sentencing hearing
and post sentencing deprived the appellant of Due Process in
violation of the Fourteenth Amendment of the federal Constitution.

ECF No. 8-4, Ex. 21.  On September 27, 2007, the appellate court affirmed Williams'

convictions, but vacated the portion of  trial court's order which mandated that Williams be

placed into solitary confinement each year on the victim's birthday and anniversary of her death.

ECF No. 8-5, Ex. 23.

Williams, now *pro se*, timely appealed that ruling to the Supreme Court of Ohio, alleging

four propositions of law:

> **Proposition of Law No. I:**  A criminal defendant is entitled under
> the Fifth, Sixth, and Fourteenth Amendments to the United States
> Constitution to real notice of the true charges against him.

3

(1:09CV0495 )

> **Proposition of Law No. II:**  A criminal defendant is entitled under the Fourteenth Amendment to the United States Constitution to a full and fair evidentiary hearing on a request to withdraw a guilty plea when there is a reason to believe the plea was secured through misinformation.
>
> **Proposition of Law No. III:**  A criminal defense attorney who misrepresents a plea offer to his client which substantially prejudices him has provided ineffective assistance of counsel under the mandates of the Sixth, and Fourteenth Amendments to the United States Constitution.
>
> **Proposition of Law No. IV**:  A trial judge who used explicit biblical references as the basis for imposition of a certain sentence on a defendant violates the Due Process and Equal Protection clauses of the Fourteenth Amendment to the United States Constitution.

ECF No. 8-6, Ex. 29.  On February 6, 2008, the Supreme Court of Ohio denied Williams leave to appeal, and dismissed the appeal as not involving any substantial constitutional question.  ECF No. 8-6, Ex. 31.  No further appeal was taken.

While Williams' appeal was pending before the Supreme Court of Ohio, Williams filed an application with the Ohio Eighth District Court of Appeals to reopen his direct appeal pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure, in which he asserted the following sole proposed assignment of error:

> I. The Appellant was denied the effective assistance of appellate counsel in violation of his Sixth and Fourteenth Amendment Rights under the United States Constitution for Counsel's failure to raise the issue that trial counsel was ineffective for failure to challenge the trial court was without subject matter jurisdiction to accept a guilty plea under an amended indictment from aggravated murder to kidnapping that changed the name and identity of the crime charge in violation of Crim.R. 7(D).

ECF No. 8-6, Ex. 32.  On March 7, 2008, the appellate court denied that application holding that

4

(1:09CV0495 )

it was barred by *res judicata*, as it raised issues which had already been decided in the direct

appeal.  ECF No. 8-6, Ex. 33.  No further appeal was taken.

On March 5, 2009, Williams filed this petition for writ of habeas corpus alleging the

following four claims for relief:

> **A.**    **GROUND ONE:** The Petitioner's guilty plea is invalid because
> the Trial Court exceeded its authority in entering his conviction in
> violation of Ohio Criminal Rule 7 and of the right to answer an
> indictment under the Fifth Amendment of the U.S. Constitution,
> and the State Court decided his appeal contrary to Federal law as
> established by the U.S. Supreme Court.

> **B.**    **GROUND TWO:** The Petitioner's guilty plea is invalid because
> he made the plea involuntarily, unknowingly, and unintelligently,
> because it was induced by the misrepresentations of his Trial
> Counsel as to its consequences and the Petitioner was deprived of
> his right to Due Process under the 14th Amendment and his right to
> effective counsel under the 6th Amendment of the United States
> Constitution, and the state court made an unreasonable
> determination of the facts and the adjudication of his appeal was
> contrary to and an unreasonable application of Federal law as
> established by the U.S. Supreme Court.

> **C.**    **GROUND THREE:** The Petitioner was denied his right to a fair
> sentencing proceeding by the sentencing judge's reliance on factors
> that are not constitutionally permissible, and the state court decided
> his appeal contrary to and an unreasonable application of Federal
> law as established by the U.S. Supreme Court, and the state court
> unreasonably determined the facts in light of the proceeding.

> **D.**    **GROUND FOUR:** The Petitioner was denied the effective
> assistance of appellate counsel for omitting a claim of ineffective
> assistance of trial counsel in the direct appeal that appellate counsel
> filed, and when the state court decided the application on this
> matter, it unreasonably applied Federal law as established by the
> U.S. Supreme Court to the facts of the case and also unreasonably
> determined those facts in light of the evidence.

ECF No. 1.

(1:09CV0495 )

### III. Discussion

To permit federal judicial resources to focus on only the most compelling cases, a

petitioner must successfully pass through several procedural gateways to qualify for federal

review.  The relevant gateways and their application to the instant petition are provided below.

### A.  Jurisdiction

Writs of habeas corpus may be granted by a district court within its respective

jurisdiction:

> Where an application for a writ of habeas corpus is made by a
> person in custody under the judgment and sentence of a State court
> of a State which contains two or more Federal judicial districts, the
> application may be filed in the district court for the district within
> which the State court was held which convicted and sentenced him
> and each of such district courts shall have concurrent jurisdiction
> to entertain the application.

28 U.S.C. § 2241(d).

Williams was convicted in the Court of Common Pleas, Cuyahoga County, Ohio within

the Northern District of Ohio and remains incarcerated.[1]  The Court, therefore, has jurisdiction

over Williams' petition.

### B.  Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-

year statute of limitations period for federal habeas petitions filed by prisoners challenging state-

court convictions after its April 24, 1996, effective date.  28 U.S.C. § 2244(d); *McCray v.*

---

[1] *See* http://www.drc.ohio.gov/ (website of the Ohio Department of Rehabilitation and
Correction for current status of and basis for Williams' incarceration).

6

(1:09CV0495 )

*Vasbinder,* 499 F.3d 568, 571 (6th Cir. 2007).    The provisions of the AEDPA are controlling

herein as the instant petition was filed after the Act's effective date.    *Lindh v. Murphy*, 521 U.S.

320, 322 (1997).

Williams' petition was timely filed in accordance with 28 U.S.C. §2244(d).

**C.  Non-Cognizable Claims**

**1.  Ground One**

In his Memorandum of Law in Support of Petition for Writ of Habeas Corpus, Williams

argues that the indictment was improperly amended by the trial court, in violation of Rule 7(D)

of the Ohio Rules of Criminal Procedure.[2]  Williams avers that when his indictment was

amended from a charge of aggravated murder to one of kidnapping, he did not receive proper

notice of the nature of the new charge against him.  He contends that this error caused his guilty

plea to be invalid and his conviction to be contrary to law.  ECF No. 1 at 19.

Respondent disputes Williams' assertion and avers that Williams claim is not cognizable

in federal habeas proceeding.  To support this contention, Respondent highlights that Williams'

---

[2] Rule 7(D) provides in pertinent part:
 The court may at any time before, during, or after a trial amend the indictment....in
 respect to any defect, imperfection, or omission in form or substance, or of any
 variance with the evidence, provided no change is made in the name or identity of the
 crime charged. If any amendment is made to the substance of the indictment,...or to
 cure a variance between the indictment...and the proof, the defendant is entitled to a
 discharge of the jury on the defendant's motion, if a jury has been impaneled, and to a
 reasonable continuance, unless it clearly appears from the whole proceedings that the
 defendant has not been misled or prejudiced by the defect or variance in respect to
 which the amendment is made, or that the defendant's rights will be fully protected
 by proceeding with the trial, or by a postponement thereof to a later day with the
 same or another jury....

7

(1:09CV0495 )

first ground for relief involves a violation of State law–Rule 7 of the Ohio Rules of Criminal

Procedure– and it involves an attack on his indictment.  Respondent reminds the Court that

violations of Sate law are not cognizable in federal habeas proceeding and that there is no

constitutional right to an indictment.  ECF No. 8.

Defendant correctly states the law.  To be entitled to relief in federal habeas corpus, a

petitioner must establish that there has been infringement of a right guaranteed under the United

States Constitution.  *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994).  A violation of State

law is not cognizable in federal habeas corpus unless such error amounts to a fundamental

miscarriage of justice or a violation of the right to due process in violation of the United States

Constitution.  *See Floyd v.  Alexander*, 148 F.3d 615, 619 (6th Cir.), *cert. denied*, 525 U.S. 1025

(1998);  *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993), *cert. denied*,

510 U.S. 1201 (1994).  It is the obligation of this Court to accept as valid a state court's

interpretation of the statutes and rules of practice of that state.  *Estelle v. McGuire*, 502 U.S. 62,

67-68 (1991).  Thus, to the extent that Williams raises an issue regarding the violation of Ohio

Criminal Rule 7(D), the Ohio Constitution, or state law, such issue is not appropriate for federal

habeas corpus review.  Only where the error resulted in the denial of fundamental fairness will

habeas relief be granted, and such are not the circumstances here.

Contrary to Respondent's argument, however, the Court finds that Williams' first ground

of relief is cognizable in this proceeding because it implicates the due process clause of the

Fourteenth Amendment.  While it is well-established that there is no federal constitutional right

(1:09CV0495 )

to be charged in an indictment,[3] "[t]he due process clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense." *Koontz*, 731 F.2d at 369 (citing *In Re Ruffalo*, 390 U.S.544 (1968)); *Blake v. Morford*, 563 F.2d 248 (6th Cir. 1977); *Watson v. Jago*, 558 F.2d 330, 338 (6th Cir. 1977).  In the case at hand, the record reveals that Ground One contains an allegation that Williams was allegedly deprived of fair notice of the charges against him when his indictment was amended to incorporate the kidnapping charge.[4] ECF No. 8.  Accordingly, the Court deems it proper to retain jurisdiction of this claim.

Nevertheless, Williams' claim for relief fails. Although he raises a constitutional claim, the record reflects that he waived this claim.  The State appellate court held that by acquiescing to the amendment of the indictment, so that Williams could enter a negotiated plea, he waived any constitutional errors associated with the amendment of the indictment.  ECF No. 8-5, Ex. 23. The State court asserted the following in relevant part:

> In his first assignment of error, Williams challenges the court's authority to accept his plea of guilty to the kidnapping charge in count two where the indictment originally charged him with aggravated murder.  Williams contends the court's action violates Crim.R. 7 and the United States Constitution.
>
> Williams argues that the court failed to comply with Crim. R. 7(A) because Williams did not give a written waiver of the rights

---

[3]  *Hurtado v. California*, 110 U.S. 516, 537-38 (1884); *Branzburg v. Hayes*, 408 U.S. 665 (1972); *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984); *Watson v. Jago*, 558 F.2d 330, 337 (6th Cir. 1977).

[4]  In Williams' brief on direct appeal to the State appellate court, Williams implied that he had received a lack of fair notice of the kidnapping charge.  ECF No. 8-4, Ex. 21.

9

(1:09CV0495 )

contained in that section of the rule.  Crim.R. 7(A) applies to a waiver of the right to be prosecuted by indictment.  Williams was prosecuted by indictment and the indictment was then amended pursuant to the plea agreement.  There is no Crim.R. 7(A) issue in this case.

Williams also claims that the trial court was without authority to amend the indictment pursuant to Crim.R. 7(D).  Crim.R. 7(D) prohibits any amendment to the indictment which would change the nature or identity of the charged crime.  If such amendment is sought by the state, the defendant has a right to a discharge of the jury (if one has been empaneled) or a reasonable continuance. However, nothing in Crim.R. 7 prohibits a defendant from acquiescing to amendment of the indictment, as he did here.  The purpose of the rule is to ensure that the accused is aware of the charges he faces and can prepare his defense accordingly.

The provisions of Crim.R. 7(D) are primarily for the defendant's protection and like constitutional rights may be waived.  As the Supreme Court of Ohio stated in *Stacy v. Van Coren* (1969), 18 Ohio St.2d 188:

> "The fact that the return of an indictment to charge one with a crime is a constitutional right does not prevent its waiver.  Constitutional rights, as any other rights, may be waived." Id. at 190.

The court was addressing the situation where a defendant is indicted for one crime and, without further action by indictment or information, pleads guilty to a different crime, and stated:

"The proper procedure in this case would have been either the return of another indictment or for the petitioner to formally waive prosecution by indictment and agree to a prosecution by information.  However, the fact that he did not do so but proceeded to plead to a different offense does not void his conviction.  The petitioner's actions under the circumstances of this case, in voluntarily entering a plea of guilty while represented by counsel, constituted a waiver of his constitutional right to indictment or information.  Although such procedure may be erroneous it does not affect the validity of his conviction." Id.

10

(1:09CV0495 )

> The record in the instant case shows that the trial court, in order to effectuate the plea agreement Williams accepted, amended the indictment to reflect the new charge of kidnapping in count two. The court specifically asked Williams' trial counsel:
>
>> "THE COURT: [Counsel], on behalf of Mr. Williams, with respect to Count 2 as amended here on the record, do you waive any defect with respect to the amendment to Kidnapping under Revised Code Section 2905.01(A)(2) and/or (A)(3)?
>>
>> COUNSEL: "Yes, Judge, to facilitate the disposition, we waive any defect."
>
> The trial court also specifically explained the amendment of count 2 of the indictment from aggravated murder to kidnapping to Williams, and asked Williams, "Do you understand that amendment, sir?"  Williams replied, "Yes, sir."
>
> Williams therefore waived any errors under Crim.R. 7(D) associated with the amendment to the indictment by the trial court. Additionally, since Williams voluntarily participated in the amendment of the indictment as part of his plea agreement, he cannot now raise the issue as error to attack his conviction.  *Stacy v. Van Coren*, supra, at 190.  See, also, *The State Ex.Rel. Beaver v. Konteh, Warden*, 83 Ohio St.3d 519, 1998 Ohio 295, 700 N.E.2d 1256.
>
> Finding no merit to Williams' arguments, we overrule his first assignment of error.

ECF No. 8-5, Ex. 23.  The Court agrees with the State Appellate court's decision on this matter as it is neither contrary to federal law nor an unreasonable application of the law or the facts.  It is well settled that a defendant who pleads guilty to an offense waives all non-jurisdictional defects in his indictment, provided that the guilty plea is knowing and voluntary.  *See United States v. Broce*, 488 U.S. 563, 569 (1989); *see also Whitehead v. Senkowski*, 943 F.2d 230, 233 (2nd Cir. 1991)

11

(1:09CV0495 )

("Generally a knowing and voluntary guilty plea precludes a federal habeas corpus review of claims relating to constitutional rights at issue prior to the entry of the plea."); *see also United States v. Martin*, 2009 U.S. Dist. Lexis 62268 (N.D. Ohio 2009) ("The Supreme Court has long recognized 'the general rule that a guilty plea, intelligently and voluntarily made, bars the later assertion of constitutional challenges to the pretrial proceedings.'").  Given that Williams entered a guilty plea to the charge of kidnapping and has failed to demonstrate to the Court that his plea was not voluntary, knowing or intelligent,[5] the Court finds that to the extent Ground One contains an allegation that Williams was deprived of adequate notice of the kidnapping charge, in violation of the constitution, this claim has been waived.

### D. **Procedural Default**

Before filing a petition in federal habeas corpus, a defendant must exercise all available state remedies, through a motion or petition for review by the state's highest court, by which he may seek relief based upon an alleged violation of constitutional rights.  *Granberry v. Greer*, 481 U.S. 129, 133 (1987).  This requirement, although not jurisdictional, is based upon issues of comity, allowing the State the opportunity to correct any constitutional violation that may have occurred in its courts, as well as creating a complete record for review should the case eventually be heard in federal habeas corpus proceeding.  *Hafley v. Sowders*, 902 F.2d 480, 482 (6th Cir. 1990).

A petitioner must present his constitutional claims fairly to the highest state court in a federal constitutional context.  *See Picard v. Conner*, 404 U.S. 270, 275-78 (1971).  Reasons of

---

[5] This issue is discussed *infra*.

12

(1:09CV0495 )

federalism and comity generally bar federal habeas corpus review of "contentions of federal law .

. . not resolved on the merits in the state proceeding due to respondent's failure to raise them

there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

Fair presentation of the factual and legal basis for a federal constitutional issue to the

state's courts may be made in four ways:

> (1) reliance upon federal cases employing constitutional analysis;
> (2) reliance upon state cases employing federal constitutional
> analysis; (3) phrasing the claim in terms of constitutional law or in
> terms sufficiently particular to allege a denial of a specific
> constitutional right; or (4) alleging facts well within the
> mainstream of constitutional law.

*McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000) (citing *Franklin v. Rose*, 811 F.2d 322,

326 (6th Cir. 1987)).  *Accord  Whiting v. Burt*, 395 F.3d 602, 613 (6th Cir. 2005); *Blackmon v.

Booker*, 394 F.3d 399, 400 (6th Cir. 2004).  It is not enough to present the facts giving rise to the

federal claim raised in habeas corpus;  a petitioner must present the same legal theory to the state

courts as is presented to the federal courts in order to preserve the claim.  *Wong v. Money*, 142

F.3d 313, 322 (6th Cir. 1998).  Even if a claim is related, but distinct, the claim is nonetheless

defaulted.  *Lott v.  Coyle*, 261 F.3d 594, 607, 619 (6th Cir.  2001).

A claim is deemed exhausted even if it has not been presented to the State's highest court

 when the petitioner is foreclosed from raising it in that forum either because the time for filing

has expired or the petitioner is otherwise procedurally precluded from raising it.  A default occurs

in the State courts if the last State court rendering a decision makes a plain statement of such

State procedural default.  *Harris v. Reed*, 489 U.S. 255 (1989).  When a petitioner fails to appeal

a claim to a State's highest court and when the opportunity to do so is lost, the petitioner is said

13

(1:09CV0495 )

to have procedurally defaulted the claim and must prove cause and prejudice for such default.

*Wainwright*, 433 U.S. at 72 (1977).  In order for the Court to overlook the procedural defaults, a petitioner must demonstrate either: (a) "cause" excusing the noncompliance and "prejudice" resulting from the constitutional error; or (b) a finding that failure to consider the claim will result in a fundamental miscarriage of justice.  *See Rust v. Zent*, 17 F.3d 155, 159-60 (6th Cir. 1994)  Demonstrating a fundamental miscarriage of justice generally requires a claim of actual innocence.  *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991).

### 1.    Ground Four

In Williams' fourth ground for relief, Williams argues that he was denied the effective assistance of appellate counsel.  Williams avers that his appellate counsel erred when he failed to argue that his trial counsel was ineffective for not presenting an argument at trial that the court lacked subject matter jurisdiction to accept his guilty plea.  Respondent contends that because Ground Four was not raised on appeal to the State supreme court, this claim has been procedurally defaulted.  The Court agrees.

The record reflects that although Williams raised this claim in his Rule 26(B) application to reopen his direct appeal, Williams failed to appeal the denial of his Rule 26(B) application to the Supreme Court of Ohio, after the initial State court denied his application.[6]  Therefore, because

---

[6] The State court denied his application, holding in pertinent part:

Since the present issue as raised by Williams was raised and addressed before this court as well as the Supreme Court of Ohio, we find that the doctrine of res judicata bars any further consideration.  *State v. Dehler*, 73 Ohio St.3d 307, 1995-Ohio-320, 652 N.E.2d 987; *State v. Terrell*, 72 Ohio St.3d 247, 1995-Ohio-54, 648 N.E.2d 1353; *State v. Smith* (Jan. 29, 1996), Cuyahoga App. No. 68643, reopening disallowed (June 14, 1996), Motion No. 71793.  We further find that the circumstances pertinent to

14

(1:09CV0495 )

Williams has failed to present Ground Four to the State's highest court, and is now precluded from

doing so,[7] the Court finds that Ground Four is procedurally defaulted. *Wainwright*, 433 U.S. at

72 (1977)

　　　　To excuse his procedural default, Williams asserts that "[t]he cause for failure to exhaust

the 26(B) to the Ohio Supreme Court is because [he] had no help to do the paperwork at the

time." The Court, however, is not persuaded by Williams' argument. It is well settled that a

habeas petitioner's *pro se* status and ignorance of the law and filing requirements is insufficient

to establish cause for a procedural default. *Ferguson v. Brunson*, 2010 U.S.Dist. Lexis 115735,

*15 (S.D.Ohio 2010) (citing *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004)). Absent a

showing of cause, this claim is procedurally defaulted and subject to dismissal on that basis.[8]

　　　　While it is true that a petitioner, such as this one, who has not shown cause and prejudice

may still convince a court to consider the defaulted claims for relief by producing new evidence

that a constitutional violation has probably resulted in a conviction of one who is actually

innocent. *Dretke v. Haley*, 541 U.S. 386 (2004). Williams has made no such showing.

---

Williams do not render the application of the doctrine of res judicata unjust.

[7] An appeal to the Supreme Court of Ohio would now be considered untimely. The Ohio Supreme
Court will not accept untimely appeals of Rule 26(B) application rulings.
Rule II,§2(A)(4)(c) of the Rules of Practice of the Ohio Supreme Court.

[8]It is not necessary to resolve the issue of "prejudice" because Williams has not demonstrated
"cause" to excuse the procedural default. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long
v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983).

(1:09CV0495 )

### E.  Merits Review

#### 1.    Ground Two

In his second claim for relief, Williams challenges the validity of his guilty plea, arguing that it was not entered knowingly, intelligently, and voluntarily.

Although the record reflects that Williams articulated a challenge to the voluntariness of his guilty plea to the Ohio Eighth District Court of Appeals, the State court addressed this issue as one challenging the trial court's decision on the motion to withdraw the guilty plea, and did not specifically analyze the issue of voluntariness of the plea.  Consequently, *de novo* review will be undertaken in these proceedings.  *See Burton v. Renico*, 391 F.3d 764, 770 (6th Cir. 2004) (finding that when a State court has chosen not to adjudicate the merits of a claim presented to it, the issue must be reviewed *de novo* by a federal court in habeas corpus proceedings).

In the Memorandum of Opinion and Order submitted by the undersigned on February 24, 2010, denying Williams' motion for an evidentiary hearing in these proceedings, the factual and legal underpinnings of this claim for relief were summarized as follows:

> The transcript of Williams' change of plea hearing reveals that, pursuant to a plea agreement reached the morning of trial, the prosecutor amended three of the four counts to which Williams pled guilty to lesser crimes. n3 ECF No. 8-7 at 3-7.  As a result,
> _____
> n3 Williams pled guilty to amended Counts 1, 2 and 3.  Count 4 was "nolled" and Williams pled guilty to Count 5, as charged in the indictment.
> _____
> Williams' pleas of guilty allowed him to avoid a possible capital sentence and, instead, risk a maximum possible term of incarceration of 38 years.  The trial judge sentenced him to 30 years.  Williams argues that his attorney promised him a sentence not longer than 20 years.

16

(1:09CV0495 )

On the record, on the day Williams entered his pleas of guilty, his counsel n4 acknowledge the following:

_____

n4 Williams was represented by two attorneys– William Thompson and John Luskin.  Based upon the change of plea portion of the transcript (ECF No. 8-7 at 1-24), only Attorney Thompson spoke. The affidavit that petitioner Williams relies upon was also attested to by Thompson.  Therefore, references to Williams' counsel or defense counsel in this Memorandum and Order refer to attorney Thompson.

_____

(1) The Prosecutor's summation of amendments and proposed guilty pleas was his "understanding of the arrangement,"

(2) Defense counsel had been representing Williams "in excess of a year, and implicit in that fact [] had ample time to discuss with Williams the case and [was] confident that [Williams was] desirous of withdrawing his formerly entered pleas of not guilty and entering pleas of guilty as outlined by the prosecution,"

(3) Williams was pleading guilty with an understanding of his Constitutional rights, and Defense counsel was "confident that [Williams] probably understands [his rights] better than most people;"

(4) Williams was "aware that the potential penalty involved here is a series of three to ten-year sentences on these 1st degree felonies and a potential one to five-year sentence with respect to– with regard to the tampering with evidence," the crimes to which Williams pled guilty;

(5) Williams was "aware that[,] as an indigent person[,] of the likelihood of a fine being imposed is not great and I've indicated that to him as well" n5;

_____

(1:09CV0495 )

n5 Defense counsel's statement that he told Williams that the "likelihood of a fine being imposed [was] not great, "given Williams' indigency, is Defense counsel's only indication that he had given Williams any reason to expect less than the maximum possible penalty, in this case–less than the maximum possible fine. ECF No. 8-7 at 8.

_____

(6) Defense counsel had "counseled [Williams] with respect to this plea, Judge, but the record should [also] reflect [Williams] had the input of his grandparents, who were kind enough to come down here today as well as his mother, just so the court is understanding that I attempted to include everybody in explaining the situation and the input that went into this decision, and beyond that, Judge, I indicated to them that at the time of sentencing, I would do everything in my power to provide as much mitigation to the Court with respect to this;"

(7) Defense counsel assured the court that apart from promising to present mitigating evidence, "[he had] made no additional threats or promises to induce [Williams] to do anything here today;" and

(8) Lastly, Defense counsel stated that he "believe[d] [Williams was] about to make a [sic] knowing, intelligent and voluntary plea[s]."

ECF No. 8-7 at 7-9.

Following Defense counsel's statements, the Court advised Williams of the rights he would waive by entering guilty pleas and the maximum penalties the court could impose for each count for which it was anticipated that Williams would enter a plea of guilty. ECF No. 8-7 at 12. **Williams acknowledged that he understood that he was waiving the right to trial; the right to confront and cross-examine any witnesses that the State of Ohio may bring forth; the right to call his own witnesses; the right to have the Court compel witnesses; the right to have the State of Ohio prove his guilt beyond a reasonable doubt at trial; and the right not to testify at the time of trial.**  ECF No. 8-7 at 12-15.

(1:09CV0495 )

The judge stated each amended crime and its maximum possible penalty on the record and Williams agreed that he understood each amendment and the attached maximum possible penalties.  ECF No. 8-7 at 15-16.  In reviewing with Williams the maximum possible terms of incarceration and fines for each of the amended crimes, twice, the judge stated that Williams could receive a maximum term of incarceration of 38 years.  He explained the maximum incarceration in detail and then summarized it.  The first time, the judge told Williams:

> the maximum on the first three [counts] are ten years, for a total of 30 years.  With Count 5, the maximum of five years.  Total of 35 years you could look at with the possible term of incarceration....Because there is one count with a felony specification of a gun spec, which would be Count 1, a firearm specification, three years, that three years would have to be served consecutive to any other time.

ECF No. 8-7 at 17.  The judge then summarized by stating: "So let's assume the maximum sentence is 35 years, which I just pointed out to you, ten years on the felony 1s, five years on the felony 3, plus three years, the maximum term of incarceration that you could receive is 38 years of incarceration.  Do you understand that, sir?"  **By answering, "Yes, sir" Williams assured the judge that he understood that the judge could impose a sentence of 38 years of incarceration in addition to a $70,000 fine.** n6

_____

n6 The judge also explained Ohio's mandatory five-year period of post release control.  ECF No. 8-7 at 18.

_____

ECF No. 8-7 at 17-18.  **In addition to making sure that Williams had not been threatened or made promises other than those stated in open court, the judge advised Williams that the judge was not giving any indication of the sentence the judge would impose.  ECF No. 8-7 at 16-17.  The judge blatantly asked Williams if he understood that "there is no promise of any particular sentence from myself regarding this matter?  Do you–I haven't promised you anything.  All I've promised you to do is to do what my job asks me, to weigh both sides of this case and to make a determination with respect to sentencing**

(1:09CV0495 )

but I have promised you nothing, is that a fair statement?"
ECF No. 8-7 at 20-21. After Williams affirmed that the judge had
made him no promises, the judge took Williams' pleas of guilty.
ECF No. 8-7 at 21-24.

Neither Williams nor his counsel said anything at the hearing to
alert the judge that either believed that the judge would impose a
certain sentence. Neither did Williams mention that his counsel
had promised him that the judge would impose a certain sentence.
Despite counsel's after-the-sentencing affidavit, the transcript does
not hint at ambiguity or confusion on the part of Williams or his
counsel. n7 **Rather, the transcript reflects that the judge
thoroughly explained the maximum possible consequences of**

_____

n7 Williams' attorney's affidavit states that he "unintentionally
mislead [sic] the defendant into accepting [a] plea bargain under
the premise that [he] was absolutely convinced that the Court
would sentence him to a term of incarceration less than 20
years...." ECF No. 1-1 at 2.

_____

**Williams' pleas of guilty and that Williams and his attorney
acknowledged that they understood those consequences**.

After the sentencing, Williams' trial counsel provided Williams
with an affidavit and a letter of apology claiming to have given
Williams misleading advice–that he "was absolutely convinced
that the Court would sentence [Williams] to a term of incarceration
of less than 20 years, and that [Williams] relied upon [counsel's]
representations to [Williams'] detriment." ECF No. 1-1, ¶7.

The issue is whether Williams knowingly, intelligently, and
voluntarily entered pleas of guilty. Stated more precisely, the issue
is whether the record before the Court is fully developed enough to
allow the Court to determine whether Williams' pleas of guilty
were knowingly, intelligently, and voluntarily entered. Yes is the
answer.

"A guilty plea must be supported by 'an affirmative
showing that it was intelligent and voluntary.'"
_Boykin v. Alabama_, 395 U.S. 238, 242 (1969). The
Sixth Circuit has held that: [a] plea is valid if it is

(1:09CV0495 )

entered voluntarily and intelligently as determined under the totality of the circumstances. *Brady v. United States*, 397 U.S. 742, 749, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). The constitution requires the circumstances to reflect that the defendant was informed of all the direct consequences of his plea. *Id.* A plea may be involuntary if the defendant does not understand the nature of the constitutional rights he is waiving, or unintelligently if the defendant does not understand the charges against him.

*Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *United States v. Ormsby*, 252 F.3d 844, 849 (6ᵗʰ Cir. 2001). "[F]or a defendant's plea of guilty to be voluntary, the defendant must be aware of the maximum sentence that could be imposed." *King v. Dutton*, 17 F.3d 151, 154 (6ᵗʰ Cir. 1994).

State court findings of historical fact that underlie the ultimate voluntariness determination are subject to a presumption of correctness and may obviate the need for an evidentiary hearing. *See Parke v. Raley*, 507 U.S. 20, 35 (1992) ("We held that although 'the governing standard as to whether a plea of guilty is voluntary for purposes of the Federal Constitution is a question of federal law,' questions of historical fact, including inferences properly drawn form such facts are in this context entitled to the presumption of correctness accorded state court factual findings under 28 U.S.C. §2254(d)." (citations omitted). The Supreme Court has held that a defendant must have "sufficient awareness of the relevant circumstances and likely consequences" of his plea. *Brady v. United States*, 397 U.S. 742, 748 (1970)." *Curry v. Wolfenbarger,* 2007 WL 269419 *6 (E.D.Mich. 2007). A showing of intelligence and voluntariness is generally made by the State's production of a transcript of state court proceedings to establish that the plea was made voluntarily. *McAdoo,* 365 F.3d at 494 (*citing Garcia v. Johnson*, 991 F.2d 324, 326 (6ᵗʰ Cir. 1993)).

**The transcript of the plea hearing obviates the need for an evidentiary hearing. The colloquy between Williams and the judge is not clouded by interjections from either the prosecution or defense or in any way unclear. The transcript plainly shows that Williams entered pleas of guilty after acknowledging that he understood the maximum possible**

(1:09CV0495 )

> **consequences of his pleas of guilty and understood that the judge had not promised him a particular sentence or any leniency. The transcript presents the best evidence of the actual communications had between the trial judge and Williams. The attorney's affidavit does not change those facts.**
>
> * * * * *
>
> **Presuming the correctness of the state record, *i.e.,* (1) that Williams understood, as he indicated on the record, that no promises other than those spread on the record by the judge existed when he entered his pleas of guilty; (2) and that his attorney, as the attorney indicated on the record, had made no promises to induce Williams' pleas of guilty, there is no basis for an evidentiary hearing.** *See Parke v. Raley*, 506 U.S. at 35.

ECF No. 12 (emphasis added.)

Although the foregoing review of the transcript of the plea proceeding and the pertinent law on the validity of guilty pleas was undertaken in the context of deciding whether an evidentiary hearing was warranted in these proceedings in habeas corpus, the Court finds the discussion and the analysis contained therein relevant to the issue at hand. Williams' argument that his plea was entered involuntarily is simply unconvincing. The record reflects that during the plea proceeding, he acknowledged that he was entering his plea with full awareness of the maximum penalty he could receive and he acknowledged that by entering his plea, he was waiving certain rights. During the course of his colloquy with the trial court, Williams made no attempt, either personally or through his attorneys, to inform the court that his guilty plea was induced by misrepresentation or coercion, that his understanding of the plea agreement differed from what was being described by the court and attorneys, or that he lacked an understanding of the consequences of the charges to which he would be entering a plea. Having failed to do so, he

22

(1:09CV0495 )

cannot now argue that he was not aware of the consequences which would follow.  Accordingly,

Williams' second ground of relief is without merit.[9]

### 2.    Ground Three

In his third claim for relief, Williams asserts that the trial judge sentenced him to a

harsher sentence based upon the trial judge's religious beliefs.  To support this contention,

Williams highlights the fact that during his sentencing, the trial judge improperly cited to biblical

references.

When Williams raised the same claim on direct appeal, the Ohio Eighth District Court of

Appeals rejected it, holding in pertinent part:

> Appellant's fifth assignment of error alleges that the use of biblical
> references by the judge during sentencing violated his due process
> rights and prevented him from having a fundamentally fair
> sentencing hearing.  Williams argues that the trial court used the
> bench as a pulpit and that the court imposed an additional 10 years
> based upon the judge's personal religious beliefs.  We find no

---

[9]    Contrary to Respondent's assertion, the Court finds that Williams' second ground of relief is
not procedurally defaulted, as the record reveals that Williams fairly presented this claim to the
State courts.  In his memorandum in support of jurisdiction to the Ohio Supreme Court, Williams
discussed federal case authorities which addressed the voluntariness of guilty pleas, including
*Walker v. Johnson*, 312 U.S. 275 (1941) and *Boykin v. Alabama*, 395 U.S. 238, 242 (1969).  ECF
No. 8-5, Ex. 26.   To argue his claim, Williams relied upon both a state case and a federal case
employing federal constitutional analysis, thus satisfying the first and second ways to fairly
present this argument to the state court set out previously herein.

The Court also finds it unnecessary to address Respondent's argument that Williams' second
ground of relief is not cognizable because it is a claim involving a state law violation.
Respondent argues that Ground Two is a claim in which Williams alleges that the State trial court
abused its discretion in denying his motion to withdraw the guilty plea.  The record reveals,
however, that Williams has limited his argument to discuss only the constitutional validity of his
guilty plea, which is an appropriate issue for federal habeas proceedings.  ECF No. 10

(1:09CV0495 )

merit to this argument.

Williams supports his argument with his own assertion that, "at one time the State would have accepted an agreed 20 year sentence."  Aside from the state's insistence that the offer was for a minimum of 20 years with the actual term to be determined by the trial court, the fact is Williams turned down that offer, deciding instead to roll the dice and hope that his counsel's prediction of less than 20 years came true.  Whether the state would have been satisfied with a lesser sentence has no bearing on the issue of the fairness of the sentencing hearing.

In *State v. Arnett* (2000), 88 Ohio St.3d 208, 2000 Ohio 302, 724 N.E.2d 793, the Supreme Court of Ohio addressed this issue and set forth the standard for determining whether the trial court's use of biblical references in sentencing violates a criminal offender's right to due process.  The Court stated:

"[W]e hold that when a sentencing judge acknowledges that he or she has consulted a religious text during his or her deliberations and quotes a portion of that text on the record in the sentencing proceeding, such conduct is not per se impermissible and does not violate the offender's right to due process, when the judge adheres to the sentencing procedures outlined in the Revised Code and when the judge's religious references do not impair the fundamental fairness of the sentencing proceeding."  Id. at 222.

The fundamental fairness of sentencing is impaired when the judge's personal religious principles form "the basis of a sentencing decision."  Id. at 221, quoting *United States v. Bakker* (C.A.4, 1991), 925 F.2d 728, 741.  However, where the record discloses many factors that cumulatively form the basis of the court's sentence and the references to the Bible is but one factor among many, that supported the judge's decision, there is no constitutional violation.  *Arnett* at 221-222.

We disagree with Williams [sic] statement that, "the trial judge's reliance on his personal religious beliefs seem to relieve him of his responsibility imposed by the sentencing code of arriving at a just sentence."  The record does not support this assertion.

The trial judge made two brief biblical references in response to

24

(1:09CV0495 )

> what he called the "faith-filled" comments made by Williams, his
> family, and his pastor in court.  The first biblical reference was to
> the prophet Jonah and was in the context that Williams caused his
> own "violent storm" and that it was Williams' own actions that
> brought him before the trial court that day.  We find no fault in that
> sentiment.
>
> The second reference to the Bible was to the prophet Micah.  We
> disagree with Williams' characterization of the judge's comments
> as relieving himself of the responsibility for imposing a harsh
> sentence.  The judge's comments reflect a belief in an afterlife and
> that the imposition of punishment in this life rests on judges like
> him, but that in the "ultimate life," God will assess either
> punishment or mercy.  While this court may find such comments
> ill-advised, the *Bakker* court recognized that "a trial judge on
> occasion will misspeak during sentencing and that every ill-advised
> word will not be the basis for reversible error." *Bakker*, 925 F.2d at
> 741.
>
> The record reflects that the trial court relied upon many factors
> prior to imposing its sentence of 30 years.  The court heard and
> considered statements from members of Williams' family as well
> as the victim's family.  Thirteen people addressed the court and
> offered their input into the sentencing process.  The court
> considered the seriousness and recidivism factors under R.C.
> 2929.12 and discussed on the record the age of the victim and
> Williams' past criminal record, which included three juvenile
> adjudications, three misdemeanor convictions, and seven felony
> convictions.  There is no indication that the judge in sentencing,
> deferred his decision-making to a "higher power."
>
> Williams' fifth assignment of error is overruled.

ECF No. 8-5, Ex. 23.

In applying the holdings of *State v. Arnett* and *United States v. Bakker* to reject Williams'

claim that the trial judge's use of biblical references during sentencing violated his due process

rights, the State appellate court's decision was neither objectively unreasonable, nor an

unreasonable determination of the facts in light of the evidence presented.  *See Arnett v. Jackson,*

(1:09CV0495 )

393 F.3d 681, 686 (6th Cir. 2005) (holding that the Supreme Court of Ohio's opinion in *State v. Arnett*, 88 Ohio St.3d 208, 724 N.E.2d 793 (2000), did not "unreasonably refuse[] to extend a principle derived from the holdings of the [United States] Supreme Court to a new context where it should apply[,]" and, therefore, was not "objectively unreasonable.")

While the trial judge's comments may have been ill-advised, his statements do not provide a basis for reversible error.  As the State appellate court concluded, there was no indication that the trial judge was motivated by his "own sense of religiosity and victimization." *Arnett v. Jackson*, 393 F.3d 681, 686 (6th Cir. 2005) (quoting *Bakker*, 925 F.2d at 740).  Rather, the record reflects that the trial judge adhered to the appropriate sentencing procedures.  The trial judge considered  numerous factors, both favorable and unfavorable to Williams, when determining the appropriate sentence, and ultimately decided upon a sentence that was within the statutory range.  As there is no doubt that the State Court's finding was "objectively unreasonable," the Court finds that Williams' third ground of relief is without merit.  *See Arnett v. Jackson*, 393 F.3d 681, 688 (6th Cir. 2005) (finding that the trial judge did not violate a prisoner's due process rights by citing to biblical scriptures, partially because the record reflected that the trial judge took into numerous factors, both favorable and unfavorable, when determining the prisoner's sentence.)

### III.  Conclusion and Recommendation

For the foregoing reasons, the undersigned Magistrate Judge recommends denying the habeas corpus petition of Micah Williams in its entirety without further proceedings and with prejudice.

(1:09CV0495 )

December 23, 2010                                    s/ *Benita Y. Pearson*
Date                                                 United States Magistrate Judge


## OBJECTIONS

Objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).